## Kitchen, Whit & Company v. Powell & Company.

(Decided February 23, 1915.)

Appeal from Pike Circuit Court.

1.  Accounts—Action on—Plea of Payment.—In an action to recover the balance of a merchandise account where the defendant admits purchase, and claims payment, the plea of payment is not good to any extent unless he alleges the extent of payment.

2.  Payment—Burden of Proof—Pleading.—Where payment is properly plead, the burden of proof is on defendant to establish it, and the court erred in his failure to find for plaintiff where defendant's proof did not show payment.

3.  Accounts—Action on—Partial Payment.—Where plaintiff's salesman agreed to allow a credit of $24.50, the defendant was entitled to a credit for that sum under the facts proven.

CHILDERS & CHILDERS for appellant.

J. S. CLINE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

The appellant is a wholesale grocery corporation of Ashland, and James Powell and Riley Ramey were partners under the firm name of Powell & Company, with a country store in Pike County. The store originally be-

longed to Mart Ratliff, but some time in 1909, Riley Ramey bought an interest with Ratliff. A month or so afterwards, perhaps in June, Jim Powell bought an interest in the firm and Ratliff retired. The witnesses do not give the dates of these changes in the firm, but all the matters involved in the controversy occurred during the year 1909. During that year H. R. Stewart was appellant's traveling salesman through that section. He was succeeded by Johnnie Johnson, January 1st, 1910. Stewart sold goods for appellant to Ratliff and then to Ratliff and Ramey and then to Powell & Company.

This is a suit by the appellant against Powell & Company to recover $240.63, balance of account for merchandise sold and delivered to Powell & Company during the year 1909. It is alleged that the total amount of sales was $476.45, and upon which appellee had paid $235.82, leaving a balance due and unpaid of $240.63.

At the January term, 1911, of the Pike Circuit Court, judgment went against Powell & Company by default. During that term the court sustained Powell & Company's motion to set the judgment aside and permit them to make defense. They filed an answer in which they admit the purchases referred to, but deny ''that they only paid plaintiff the sum of $235.82.'' They make no allegation as to the amount they did pay. The answer sets up a counter-claim against Kitchen, Whit & Company. It is averred that Mart Ratliff & Company owed Kitchen, Whit & Company $32.42 at the time they took over the business, and that they agreed to pay that account, but that while Powell and Ramey were away from the store appellant's salesman, H. R. Stewart, took advantage of their clerks, and wrongfully collected on Mart Ratliff's account the sum of $42.62. They ask for a judgment over against appellant on this account for $42.62, although they only claim the amount wrongfully collected was $10.

The answer was not demurred to, and on these issues they went to trial, and the jury failed to agree. On motion of Powell & Company, the case was then transferred to equity, and referred to the Master Commissioner with directions to take proof and report his findings on the questions in controversy. His greatest difficulty must have been to find from the pleadings just what was in controversy. But brushing aside all difficulties, the Commissioner reported that appellant was

indebted to Powell & Company in the sum of $25.11, that being the "amount overpaid by them."

Appellant filed exceptions to the report, and they were sustained to the extent of the $25.11 over payment, but the petition was dismissed for the reason, as the judgment states, that "the court is of the opinion that the accounts are so mixed that the court cannot tell how the matter stands, as it is doubtful which side, if either, is indebted to the other, and the court adjudges that plaintiff's petition be dismissed, and that each party will pay their own cost." Each party excepted. Kitchen & Company bring the appeal and Powell & Company pray a cross-appeal. In view of the pleadings we have reached the conclusion that the judgment of the court is erroneous.

The burden of proof was upon Powell & Company to show payment, as they admit the purchase. If there was doubt or uncertainty, then it follows that Powell & Company failed to sustain their case. They do not aver that they paid anything on the account more than the credits named in the petition. For this reason, the answer did not present a defense. The real amount of the counter-claim was only $10, and it was not proven.

We have examined the record carefully, and have compared the invoices and the receipts in evidence, and we are convinced that their plea of payment, had it been properly set up, is not sustained.

Powell and Ramey never knew anything about the business, and gave it no attention. Powell was the Deputy Sheriff, and his time was almost wholly taken elsewhere by the duties of his office, and Ramey was unlettered, and not often about the store. The business was conducted by inexperienced clerks, who served a month or so at a time and there were four of them altogether. As the goods were sold invoices were sent, and when Stewart visited them, he sometimes made collections, and would credit payments on the invoices, and also write a receipt for the same amount in a book kept by Powell & Company at the store for that purpose. The payments noted on the invoices and entered on the receipt book show from the dates and amounts that they covered the same transaction, but on the trial Powell & Company claimed credit for both amounts. By this manifest duplication of receipts, and by offering in evidence two other receipted invoices aggregating $146.33, for

goods sold to Mart Ratliff & Company, and the $42.62 overpaid Ratliff item set up in the counter-claim, they insist that they have paid Kitchen & Company as much or more than the $476.45 worth of goods which they purchased. None of the Ratliff items are included in the account sued on. It is evident that the $146.33, receipted invoices of Ratliff & Company, were papers left in the store when Ratliff went out of business, and there is no evidence that they were paid by Powell & Company. The notation of payment is dated on one of the invoices July 10th, 1909, and the other July 13th, 1909. Bart Ramey testifies that he was clerk in the store at that time, and says that *if* he paid them it was without authority, but does not say that he did pay them. In other words, he says that all he was authorized to pay was the $32.42 account of Ramey & Company. No witness testifies that Powell & Company paid these invoices, and one of these, a $78.04 invoice, as copied into the record, shows that the payment was made by Jim Ratliff. More than this, and it is not denied, Mart Ratliff testifies that when he sold to Powell & Company they agreed to pay all of his outstanding accounts. No doubt, he represented to Powell & Company that $32.42 was all that he owed to appellant, for he says that Stewart had told him that was the amount due, but he says that for some time afterwards merchandise continued to come to the store in the name of Ratliff & Company, or rather that on several occasions goods would be brought to his house billed to him, and he would give directions to take them on down to the store. He says that he complained to Powell & Company about buying goods in his name. These invoices were made out in May and, as above stated, the witnesses did not show when these business transfers occurred, but if they were purchases actually made by Ratliff, there is no proof that Powell & Company paid them. If they were purchases made by Powell & Company in Ratliff's name, then they got the goods and ought to have paid for them.

Bart Ramey was a young teacher, and left the store about the last of July to take charge of a school. He says that about the first of January, 1910, Johnson, who had succeeded Stewart, came to the store to make a settlement or collect the account, and Powell & Company sent for Ramey to come over to the store and assist them. He says that they got out the invoices and receipts, and

that Johnson figured a balance of $6.15. $5 was then paid, leaving a balance of $1.15. Johnson admits the visit, but says that he only had with him an unitemized statement showing the $245.63 balance due. He knew nothing of the several invoices and credits going to make up the balance. The invoices and receipts in the possession of Powell & Company were gotten out, and they did make some calculations with reference to them. Counting the duplicated receipts they figured a balance, but they made no settlement and no one testifies that they did. It is plain from the testimony of Bart Ramey and Johnson that the calculations they made were drawn from the duplicate receipts upon which, in our opinion, the appellees have erroneously based their defense.

We do find one error in the account. There is an item of $24.50 charged for meat. The evidence shows that some of this meat was spoiled, and that Stewart told them to return what they had on hand, and their account would be credited for $24.50. The net weight of the meat returned figured $15.93, and appellant only credited the account with that sum. Allowing a credit of $24.50 instead of $15.93, it would show a balance due appellant of $231.06, and on return of the case, judgment should be entered against appellees for that sum.

Except the meat item, the appellees have been credited with all that the evidence shows they paid.

The judgment is, therefore, reversed for proceedings in conformity with this opinion. It is affirmed on the cross-appeal.